UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ANTONIO RAMON MARTINEZ-LOPEZ,

       Defendant.
                                    /

File No. 1:16-CR-62

HON. PAUL L. MALONEY

## **OPINION**

       Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed by Defendant Antonio Ramon Martinez-Lopez (ECF No. 396). The Government has filed a response to the motion (ECF No. 421), accompanied by affidavits from Defendant's trial attorneys (ECF Nos. 417, 418), and Defendant has filed a reply (ECF No. 423). The Government argues that Defendant's grounds for relief are meritless. The Court agrees with the Government. Accordingly, for the reasons herein, the motion under § 2255 will be denied.

### **I. Background**

       In March 2016, a grand jury returned an indictment charging Defendant and several co-defendants with conspiracy to commit mail fraud, health care fraud, and mail fraud. As the case progressed, the grand jury returned several superseding indictments. In February 2017, the grand jury returned a fourth superseding indictment (ECF No. 229), charging Defendant and Co-Defendants Belkis Soca-Fernandez and David Sosa-Baladron with one count of conspiracy to commit mail fraud (Count 1), 12 counts of health care fraud (Counts 2-13), and 8 counts of mail

fraud (Counts 14-21). It also charged Defendant with one count of unlawful procurement of naturalization (Count 22).

The charges against Defendant stemmed from his involvement in a scheme to submit fraudulent claims to automobile insurance companies. Defendant operated a business called Revive Therapy Center, L.L.C., in Wyoming, Michigan. Later, he and his co-defendants established Renue Therapy in Lansing, Michigan, and H&H Rehab Center in Wyoming, Michigan. Defendant worked with Soca-Fernandez and Sosa-Baladron to recruit others to stage automobile accidents and then seek physical therapy that was unnecessary or was not provided. Defendants submitted false claims for this therapy through Revive and the two other clinics, and the insurance companies paid these claims until they discovered that the claims were fraudulent.

After Defendant was arrested on April 20, 2016, he retained attorney Kurt Richardson to represent him. Over the next seven months, Defendant made or joined three requests to postpone the trial date to permit more time to prepare for trial. (Consent to Adjournment/Waiver ECF Nos. 66, 125, 172.) The Court granted those requests.

On January 19, 2017, Richardson asked the Court for permission to withdraw as counsel, contending that the relationship between him and Defendant had broken down due to a "failure of communication and the meaningful exchange of information necessary and required for an effective defense and representation." (Mot. to Withdraw, ECF No. 195, PageID.705.) Among other things, Richardson contended that Defendant "has not responded in a timely manner of [sic] requests to sign court documents or to provide information essential to an effective defense . . . ." (*Id.*, PageID.706.) The Court scheduled the motion for a hearing on January 30, requiring Defendant to be present at the hearing. Defendant did not show up for the hearing, however, so the Court issued a warrant for his arrest. The Court also granted the motion to withdraw.

On February 8, 2017, the Court appointed Geoffrey Upshaw to represent Defendant. Upshaw promptly asked the Court to postpone the trial, which was scheduled for March 7, 2017, so that he could review the discovery material and prepare for trial. (Mot. for Ends of Justice Continuance, ECF No. 214.) Upshaw contended that Richardson had focused exclusively on plea bargaining, and had not prepared for trial; Richardson had not interviewed or subpoenaed any potential witnesses or developed a theory of defense. In the alternative, Upshaw asked the Court to sever Defendant's trial from that of his co-defendants.

The Court denied the motion for a continuance and/or severance, noting the many prior delays in the case and the fact that Defendant contributed to the circumstances giving rise to his request. (Order, ECF No. 220, PageID.815.) He did not cooperate with his previous attorney for many months, and by failing to attend the hearing on his attorney's motion to withdraw, he left the Court without explanation for his lack of cooperation.

The case proceeded to a jury trial beginning on March 7, 2017. At the end of the trial, the jury found Defendants guilty of all the counts against them. On July 24, 2017, the Court sentenced Defendant to a prison term of 87 months for all counts.

Defendant appealed his conviction and sentence. The Court of Appeals for the Sixth Circuit affirmed this Court's judgment in an opinion issued on August 23, 2018. *See United States v. Martinez-Lopez*, 747 F. App'x 326 (6th Cir. 2018). Defendant appealed that decision to the United States Supreme Court, which denied a petition for writ of certiorari on February 19, 2019.

In Defendant's motion under 28 U.S.C. § 2255, he raises the following grounds for relief:

I. [I]neffective assistance of counsel based on initial counsel's untimely withdrawal from the case and counsel's failure to investigate the case and prepare for trial.

II. Trial counsel was ineffective because counsel compelled [Defendant] to provide post-conviction cooperation which included Grand jury testimony yet counsel failed to deliver on the promise of a Rule 35(b) reduction which was Movant's understanding of the agreement with the government for his post-conviction cooperation.

III. Appellate counsel failed to raise a recent Supreme Court case, *Maslenjak v. United States*, 137 S. Ct. 1918 (2017), in appeal even though the decision in this case would have overturned [Defendant's] conviction for Unlawful Procurement of Naturalization.

(§ 2255 Motion, ECF No. 396, PageID.4056, 4057, 4059.)

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486,

488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

### B. Evidentiary Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III. Analysis

### A. Ineffective Assistance of Counsel (Richardson)

Defendant argues that his first attorney, Kurt Richardson, provided ineffective assistance because he did not investigate Defendant's case and made an untimely motion to withdraw, leaving Defendant in an "untenable" position six weeks before the scheduled trial date. (§ 2255 Motion, PageID.4073.) Defendant attributes the breakdown in his relationship with Richardson to an inability to "effectively" communicate caused by a "language barrier." (Def.'s Reply, ECF No. 423, PageID.4301.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced Defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Defendant bears the burden of overcoming the

5

presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, Defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Richardson has provided an affidavit explaining his actions. (Richardson Aff., ECF No. 418.) Richardson contends that he had many conversations with Defendant. In those conversations, Defendant was able to speak conversational English and "understood clearly" what they were discussing. (*Id.*, PageID.4270.) Richardson also reviewed the discovery materials provided by the Government, and he discussed those materials with Defendant and the Assistant United States Attorney. After review of the evidence, Richardson believed that Defendant's best course of action would be to plead guilty and cooperate with the Government, and Richardson conveyed this view to Defendant on several occasions, beginning in September 2016. On one such occasion, Richardson discussed the issue in a conference call with Defendant. There was an interpreter on the call, available to provide translation services if needed. Defendant did not heed Richardson's advice. Instead, Defendant repeatedly asked Richardson to delay the proceedings and find a way for Defendant to remain in Florida.

When it became clear that Defendant would not plead guilty, Richardson asked Defendant for assistance in gathering information relevant to a defense at trial. Defendant, however, repeatedly failed to provide any material evidence or witnesses for trial. He also refused to give Richardson a direct answer about how he wished to defend the case. Richardson believed that Defendant's strategy was "to simply ignore the reality of the situation he was facing." (*Id.*, PageID.4271.) Eventually, Richardson filed the motion to withdraw based on what he perceived as a "material breakdown in the attorney-client relationship." (*Id.*)

Defendant does not meaningfully contest Richardson's assertions, which are consistent with the record. For instance, Defendant's failure to attend the hearing on his attorney's motion to withdraw suggests that Defendant was not interested in actively participating in the defense of his case.

To the extent Defendant relies on a "language barrier" as the reason for his inability to work with Richardson, Defendant does not address Richardson's assertions that Defendant speaks conversational English,[1] that Defendant spoke to Richardson on at least one occasion with an interpreter available, and that Defendant failed to give Richardson any material evidence or names of witnesses that would assist his defense. Indeed, even at this point, Defendant does not identify any helpful evidence or witnesses, or any line of investigation that would have aided his defense.

Defendant's failure to identify any meaningful avenue of investigation, any helpful evidence, or any specific actions that his attorney should have taken renders his ineffective

---

[1] Defendant himself acknowledges that he knows some English "from the street." (§ 2255 Motion, PageID.4076.) Moreover, as part of his citizenship application, Defendant had to demonstrate an understanding of written and spoken English. (Trial Tr. V, ECF No. 368, PageID.3185.) A witness at trial confirmed that Defendant spoke some English. (*Id.*, PageID.3124.) Another witness testified that Defendant could read and write very little English in 2012, but his English improved after he moved to Michigan and applied for citizenship. (Trial Tr. VI, ECF No. 369, PageID.3407.) In addition, at his sentencing hearing, Defendant addressed the Court in English. (Sentencing Tr., ECF No. 371, PageID.3604, 3621.)

assistance claim meritless for lack of prejudice. In contrast to the cases cited by Defendant, he does not identify any other evidence or witnesses that his attorney should have investigated or presented. *Cf. Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (discussing counsel's failure to discover "powerful" mitigating evidence from the defendant's background); *Towns v. Smith*, 395 F.3d 251, 259 (6th Cir. 2005) (discussing counsel's failure to investigate a "known and potentially important witness"); *Hamblin v. Mitchell*, 354 F.3d 482, 493 (6th Cir. 2003) (discussing counsel's failure to present a "wealth of mitigating evidence," including details about the defendant's mental history and abusive childhood); *Glenn v. Tate*, 71 F.3d 1204, 1211 (6th Cir. 1995) (finding ineffective assistance where counsel "failed to present pertinent evidence of mental history and mental capacity"). Accordingly, Defendant has not shown that there is a reasonable probability that the outcome would have been different if his attorney's performance had not been deficient in the manner alleged. Defendant's "[b]are allegations of prejudice are not sufficient" to show ineffective assistance of counsel. *Goldsby v. United States*, 152 F. App'x 431, 436 (6th Cir. 2005).

### B. Ineffective Assistance of Counsel (Upshaw)

#### 1. Pretrial and Trial Assistance

The Court appointed Upshaw to represent Defendant after it granted Richardson's motion to withdraw as counsel. Defendant claims that Upshaw provided ineffective assistance because he did not retain an interpreter to communicate with Defendant and did not investigate the case or interview potential witnesses. In addition, Upshaw did not argue for separate trials for Defendant and his co-defendants. Defendant contends that Soca-Fernandez "was prepared" to offer incriminating evidence against Defendant, putting Defendant in an "untenable position" at trial, and when Soca-Fernandez "turned on" Defendant, Upshaw should have moved for a mistrial. (§ 2255 Motion, PageID.4075.)

As to Upshaw's failure to retain an interpreter, Defendant does not contest the statements in Upshaw's affidavit, wherein Upshaw asserts that he spoke with Defendant in English in at least four separate meetings, and that Defendant advised Upshaw that he did not need an interpreter for their attorney-client communications. (Upshaw Aff., ECF No. 417, PageID.4264.) At a fifth meeting, Upshaw brought a Spanish-language interpreter with him to make sure that Defendant understood their communications, but Defendant primarily spoke in English. (*Id.*, PageID.4265.) An interpreter was also available at trial, seated next to Defendant, but Defendant and Upshaw spoke to one another in English. (*Id.*, PageID.4266.)

Even assuming that a language barrier existed, and that there was no interpreter present at meetings between Defendant and Upshaw, Defendant does not point to any specific consequences from that barrier. He does not point to any manner in which his defense or his attorney's representation of him was impacted by that barrier. He merely contends in vague terms that he was not able to adequately "communicate the facts of the case and defense strategy to defense counsel." (§ 2255 Motion, PageID.4-76.) He does not indicate what facts or strategy were not communicated, however. Thus, he has not shown prejudice as required by *Strickland*.

As to Upshaw's alleged lack of pretrial preparation, Defendant's claim is unsupported. The trial transcripts indicate that Upshaw was thoroughly versed in the facts and evidence at issue in the case. For example, when the Court was considering whether to admit an unavailable witness's statements in a plea agreement and in testimony to the grand jury, Upshaw noted several subtle discrepancies between the plea agreement and the grand jury testimony. (Trial Tr. II, ECF No. 365, PageID.2497-2499.) Upshaw also raised a number of objections throughout the trial and cross-examined many of the Government's witnesses, consistently attempting to establish that Defendant had a limited role in the conspiracy. Moreover, of the three defense

9

attorneys representing the three defendants at trial, Upshaw was the only one who called and presented a defense witness. Defendant does not specify what other evidence or defense Upshaw should have investigated or presented. Thus, Defendant has not shown unreasonable performance or prejudice.

Defendant also faults Upshaw for failing to sever Defendants trial from that of his co-defendants, but Defendant ignores the fact that Upshaw made that very request. When Upshaw asked the Court to postpone the trial date, he also asked the Court to sever Defendant's trial. The Court denied both requests. (*See* Order Denying Mot. for Continuance or Severance, ECF No. 220.) Defendant does not indicate what else Upshaw could have done, let alone show that he was prejudiced by counsel's actions.

The Court of Appeals has summarized the standard for severance of criminal trials as follows:

> As a general rule, persons jointly indicted should be tried together because "there is almost always common evidence against the joined defendants that allows for the economy of a single trial." *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "The fact that a defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion: the defendant must show 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. DeFranco*, 30 F.3d 664, 669-70 (6th Cir. 1994).

*United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002). There is no bright-line rule requiring severance whenever co-defendants have "conflicting" or "mutually antagonistic" defenses. *Zafiro*, 506 U.S. at 538-39.

Defendant has not demonstrated that severance was warranted in his case, or that he was subjected to a mistrial due to joinder of his proceedings with the other defendants. There is no support for his contention that he was harmed by having a trial with Defendant Soca-

Fernandez. It is not clear what Defendant means by his claim that Soca-Fernandez "turned on" him. Contrary to Defendant's assertions, Soca-Fernandez did not testify at the trial or offer any evidence against Defendant. Thus, the Court cannot discern any legitimate basis for Upshaw to have argued for a mistrial. Upshaw could not have been ineffective by failing to make a frivolous argument.

### 2. Postconviction Assistance

Defendant also claims that Upshaw was ineffective because he persuaded Defendant to cooperate with the Government after his conviction, convincing Defendant that the Government would file a motion under Rule 35(b) to reduce Defendant's sentence. The Government never filed such a motion.

Before the Court sentenced Defendant, he testified in grand jury proceedings against other individuals involved in the healthcare fraud scheme. (*See* Pl.'s Mem. in Support of Ex Parte Mot. for Downward Departure, ECF No. 321-3, PageID.1680.) Because of that testimony, the Government asked the Court to reduce Defendant's offense level by four levels, in accordance with § 5K1.1 of the Sentencing Guidelines. (*Id.*, PageID.1682.) The Court granted the Government's request and sentenced Defendant within the reduced guidelines range. (Sentencing Tr., ECF No. 371, PageID.3626.) In other words, Defendant received a reduction in his sentence due to his cooperation. The Government did not need to file a Rule 35(b) motion to achieve that result. Accordingly, counsel was not ineffective for advising Defendant to cooperate because that cooperation benefitted Defendant.

Defendant contends that he also cooperated *after* his sentencing based on assurances by counsel that the Government would file a Rule 35(b) motion. However, Defendant does not indicate what cooperation he provided. Instead, he asserts that his wife cooperated based on their understanding that Defendant would receive an additional reduction in his sentence. But

even assuming that Upshaw erroneously promised that the Government would file a Rule 35(b) motion to reduce Defendant's sentence if Defendant or his wife cooperated with the Government after Defendant's sentencing, Defendant does not indicate how the outcome of his proceedings would have been any different if his counsel had not provided that advice. With or without the additional cooperation of Defendant or his wife, his sentence would be the same as it is today. Defendant claims that his wife put herself at risk of harm by cooperating with the Government, but that is not the sort of prejudice that is relevant to a claim of ineffective assistance. Under *Strickland*, the prejudice analysis looks to whether "the result of the proceeding would have been different." *Id.* at 694. Defendant's or his wife's fear of reprisal is not part of the result of Defendant's criminal proceedings. Thus, Defendant has not shown that counsel's allegedly erroneous advice prejudiced him.

### C. Ineffective Assistance of Appellate Counsel

Finally, Defendant argues that his appellate counsel was ineffective for failing to argue that the Supreme Court's decision in *Maslenjak v. United States*, 137 S. Ct. 1918 (2017), applied to his case, undermining his conviction for unlawful procurement of naturalization.

The jury convicted Defendant of that offense after hearing evidence that he answered "no" in response to a question in his citizenship application asking whether he had ever committed a crime or offense for which he was not arrested. (Trial Tr. V, PageID.3189-3190.) He did not disclose his actions in connection with the insurance fraud scheme. The immigration official reviewing his application testified that if Defendant had disclosed his activities related to the insurance fraud scheme, that disclosure would have affected the decision on his citizenship application. (*Id.*, PageID.3190.)

In *Maslenjak*, the trial court improperly instructed the jury that it could convict the defendant under 18 U.S.C. § 1425(a) based on any false statement in the naturalization process.

137 S. Ct. at 1930. The Supreme Court held that false statements during the naturalization process are not sufficient in themselves to qualify as a violation of 18 U.S.C. § 1425(a). The false statements must be *material* to the citizenship decision; in other words, if a reasonable official had known the truth, he would have denied the citizenship application. *Maslenjak*, 137 S. Ct. at 1930-31.

Defendant's attorney did not cite *Maslenjak* in his appellate brief; instead, he argued that there was not sufficient evidence to convict Defendant of naturalization fraud because the evidence did not show that Defendant was involved in fraudulently staging a car accident. Defendant's attorney changed tack at oral argument, arguing that the evidence did not demonstrate that Defendant's false statement was material to his citizenship application, citing *Maslenjak*. The panel of judges hearing the argument suggested that this new issue was not properly before the court because Defendant's attorney had not raised it in his written brief or in a supplement thereto. It is not clear whether the court addressed the issue in its opinion because it did not discuss *Maslenjak* or the materiality of Defendant's false statement. The court simply held that there was sufficient evidence to uphold the conviction for naturalization fraud. *See Martinez-Lopez*, 747 F. App'x at 333.

The standard for evaluating the performance of appellate counsel is tailored to the circumstances. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must

have in making tactical decisions." *Strickland*, 466 U.S. at 688. It is difficult to demonstrate that an appellate attorney has violated the performance prong of *Strickland* where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

The standard for prejudice due to appellate counsel's failure to raise an issue is whether there is a "reasonable probability that, but for his counsel's [error], [defendant] would have prevailed on his appeal." *Id.* at 285.

Defendant's claim is meritless because he has not shown prejudice. His reliance on *Maslenjak* is misplaced. Defendant contends that his case is like *Maslenjak* because this Court did not instruct the jury to determine whether his false statement was causally connected to the procurement of his citizenship; the Court allowed the jury to convict him based on any false statement, "no matter how inconsequential to the ultimate decision." (§ 2255 Motion, PageID.4081.) On the contrary, this Court expressly instructed the jury that it could find Defendant guilty of unlawfully procuring naturalization only if it found that he "knowingly [made] any *materially* false statement under oath relating to naturalization." (Trial Tr. VII, ECF No. 370, PageID.3576 (emphasis added).) "A materially false statement is a statement that had a natural tendency to influence or is capable of influencing the decision of immigration officials." (*Id.*) Thus, the jury instructions in Defendant's case did not suffer from the deficiency noted in *Maslenjak*. The instructions did not permit the jury to find Defendant guilty solely because he made a false statement in the naturalization process; the jury had to find that Defendant's statement was "material" to the naturalization decision because it influenced that decision.

Defendant also argues that he did not make a materially false statement because he "did not believe at the time that he was committing a crime." (Def.'s Reply, PageID.4304.) No evidence in the record supports Defendant's assertion. Moreover, the jury found otherwise. It found, per the Court's instructions, that Defendant "knowingly" made a false statement. Therefore, it necessarily found that Defendant was aware that he had committed a crime and knew that his statement to the contrary in his citizenship application was false. It also necessarily found that this statement was material. Those findings are consistent with the evidence and the holding in *Maslenjak*.

Defendant resists this result based on a misreading of *Maslenjak*. According to Defendant, the Court in *Maslenjak* noted that a person who arrives in a federal building for his naturalization interview with a gun in his possession may not realize that he is breaking the law and, thus, he would not be making a materially false statement if he represented that he had not committed a crime. That reasoning is not found in *Maslenjak*. Instead, the Supreme Court noted that a defendant who brings a weapon to a federal building when completing her citizenship application has "violated the law," but that violation is "merely coincidental" to the acquisition of citizenship; it has no "causal relationship" to the procurement of naturalization, so it does not qualify as a violation of § 1425(a). *Maslenjak*, 137 S. Ct. at 1926. The Supreme Court said nothing about a defendant who did not realize that she broke the law, but represented in her citizenship application that she had not committed a crime.

In summary, to the extent Defendant claims that his attorney should have raised *Maslenjak* on appeal, his claim is meritless because *Maslenjak* does not change the result of his case. Thus, he cannot show that there is a reasonable probability that he would have prevailed on appeal if his attorney had properly raised the issue.

## IV. Conclusion

For the reasons stated herein, the Court finds that Defendant's claims are meritless. Moreover, an evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues under the *Slack* standard and concludes that reasonable jurists could not find that this Court's denial of Defendant's claims was debatable or wrong.

An order and judgment will enter consistent with this Opinion.


Dated: December 3, 2019              /s/ Paul L. Maloney
                                                                Paul L. Maloney
                                                                 United States District Judge